IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY BARNES-STAPLES, | ) |
| Plaintiff, | ) |
| | ) Case No. |
| vs. | ) |
| | ) |
| EMILY W. MURPHY, ADMINSTRATOR GENERAL SERVICES ADMINISTRATION, | ) JURY DEMAND |
| Defendant. | ) |

## COMPLAINT

Plaintiff KIMBERLY BARNES-STAPLES ("Plaintiff" or "Ms. Barnes-Staples"), states for her complaint against EMILY W. MURPHY, ADMINSTRATOR GENERAL SERVICES ADMINISTRATION ("Defendant" or "GSA") as follows:

### INTRODUCTION

1. Ms. Barnes- Staples has invested 28 years into a career with the General Services Administration, in which she has regularly earned praise from her supervisors including consistently receiving the highest annual rating possible. Under her leadership as Portfolio Information and Valuation Branch Manager, Ms. Barnes-Staples has utilized her impressive academic background and drastically improved branch performance while managing the 24-employee branch. In an effort to further advance both her career and the interests of the GSA, Ms. Barnes-Staples has applied for multiple GS-15 positions, yet has been denied the opportunity each time due to her status as an African American woman.

2. The General Services Administration, Public Building Service, Great Lakes Region 5 has demonstrated a history of favoring Caucasian men and Caucasian women for promotion to

GS-15 positions to the detriment of African Americans generally with the greatest impact being on African American women. To manipulate the process to ensure Caucasian candidates are selected, Region 5 has tailored the interview, hiring, and promotion processes to specific strengths and experiences of the Caucasian men and Caucasian women competing with Ms. Barnes-Staples for the position, even when doing so results in a focus on experience and knowledge not included in the job descriptions.

3. In July 2018, Ms. Barnes-Staples applied for a Director position and was denied an interview on the basis that she lacked the underlying technical knowledge. Less than one year later, in March of 2019, Ms. Barnes-Staples applied for another Director position in which she did have the technical knowledge, yet now Region 5 said technical knowledge was not important and the position went to a Caucasian woman who lacked technical knowledge. The GSA keeps moving the target depending on the Caucasian candidate it seeks to promote.

4. As a result of these events, Ms. Barnes-Staples has suffered substantial loss including lost wages and interference with her career. Ms. Barnes-Staples has also suffered emotional distress. Therefore, Ms. Barnes-Staples brings this action for unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*.

## THE PARTIES

5. Plaintiff Ms. Barnes-Staples is an African-American woman and a citizen of Illinois. She received her undergraduate degree from Northwestern University, earning a Bachelor of Science in Communicative Disorders. She went on to earn a Master of Business Administration from the Stephen M. Ross School of Business at the University of Michigan.

6. Emily W. Murphy is the administrator for the General Services Administration.

2

7. The General Services Administration is an administrative agency of the United States of America.

8. General Services Administration, Public Building Service, Great Lakes Region 5 is headquartered in Chicago, Illinois.

## JURISDICTION AND VENUE

9. Jurisdiction is invoked under 28 U.S.C. § 1331 because this case involves federal questions arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

10. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e-16(c).

11. This claim is brought pursuant to 29 C.F.R. § 1614.407(b). More than 180 days have elapsed since the filing of a complaint with the Equal Employment Opportunity ("EEO") with no final action having been undertaken and no appeal having been filed.

12. This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 in that, Ms. Barnes-Staples applied and interviewed for the positions in Chicago, Illinois, which is in the Northern District of Illinois and she works in Chicago, Illinois.

## FACTS

13. Ms. Barnes-Staples is a GS-14 employee with the General Services Administration, Public Building Service, Great Lakes Region 5 ("Region 5"). Ms. Barnes-Staples has worked for the General Services Administration ("GSA") for 28 years.

14. Ms. Barnes Staples' experience at that GSA includes 10 years as a Lease Contracting Officer, two years as Judiciary Regional Account Manager, six years as Judiciary Client Delivery Team Manager, and 10 years as Portfolio Information and Valuation Branch Manager. Ms. Barnes-Staples' positions as Lease Contracting Officer, Judiciary Regional Account

3

Manager, and Judiciary Client Delivery Team Manager establish extensive experience within the real estate division at Region 5.

15. Ms. Barnes-Staples possesses GS-1170 unlimited Real Property Leasing Warrant ("1170 warrant"), which is distinct from the GS-1102 warrant ("1102 warrant"). A Real Property Leasing Warrant is earned through the completion of certain classes and based on experience directly handling leasing matters. There are various levels of these warrants and Ms. Barnes-Staples has achieved the highest—the unlimited warrant. This means that Ms. Barnes-Staples has authority to lease property on behalf of GSA for any amount—there is no limitation. A limited warrant, on the other hand, limits the holder to transactions with specific monetary thresholds.

16. Ms. Barnes-Staples has an impressive academic background, which includes a Bachelor of Science from Northwestern University, and a Master of Business Administration ("MBA") from the Stephen M. Ross School of Business at the University of Michigan. The Stephen M. Ross School of Business at the University of Michigan is currently ranked the number four business school in the country for business graduate programs according to U.S. News and World Report.

17. There are currently 11 positions in Region 5 that are at level GS-15 or above. Of those, only one is held by an African American, and none are held by African American women. This ratio is not reflective of the overall demographics in Region 5 for positions below the GS-15 level.

18. Since 2010, no African American women have obtained positions in Region 5 at the GS-15 or above level.

19. Since 2010, Ms. Barnes-Staples has applied for six positions at the GS-15 level in Region 5, yet has been denied the promotion in each instance.

20. Since 2010, there have been approximately 11 promotions made to the GS-15 level or above in Region 5. No African American woman was promoted to the GS-15 level in any of these instances.

21. In July 2018, Ms. Barnes-Staples applied for the GS-15 position of Facilities Management and Service Program Director, under announcement number 1805026LBMP.

22. Ms. Barnes-Staples was denied an interview for the Facilities Management and Services Program Director position, on the basis that she lacked the necessary technical experience.

23. The Facilities Management and Services Program Director position was awarded to a candidate who was not an African American woman.

24. In March 2019, Ms. Barnes-Staples applied for the GS-15 position of Real Estate Director under announcement number 1905024LBMP. The Real Estate Director position is a managerial role, which includes responsibilities for supervising lease contracting officers and serving as a principal advisor for lease administration matters.

25. Ms. Barnes-Staples was deemed qualified by human resources and was permitted to interview for the position.

26. At the time she applied for the Real Estate Director position, Ms. Barnes-Staples was not working within the real estate division though she had for 16 years in the past.

27. Ms. Barnes-Staples MBA provided her with extensive education on management principles and her experience managing for both the GSA and her prior employers made her well qualified for a managerial position.

28. Sherly Wittstock also applied for the Real Estate Director position. Ms. Wittstock is Caucasian.

29. At the time she applied for the Real Estate Director position, Ms. Wittstock was working within the real estate division.

30. Ms. Wittstock was also deemed qualified by human resources and permitted to interview for the position, in spite of her lack of substantive experience.

31. Ms. Wittstock lacks an 1170 warrant.

32. Ms. Wittstock lacks any experience drafting leases.

33. Ms. Wittstock lacks the experience and technical knowledge of a lease contracting officer.

34. Ms. Wittstock does not possess any degree related to business, management, or accounting. Ms. Wittstock studied art history at Northern Illinois University and received a Bachelor of Arts. Ms. Wittstock does not possess a graduate degree.

35. When conducting first level interviews for the Real Estate Director position, the interview panel afforded no consideration to the disparate educational qualifications between Ms. Barnes-Staples and Ms. Wittstock.

36. When conducting first level interviews for the Real Estate Director position, the interview panel afforded no consideration to the disparate warrants possessed by Ms. Barnes-Staples and Ms. Wittstock. Ms. Barnes-Staples was selected to advance to the second round of interviews along with four of the five candidates interviewing for the position.

37. When conducting second level interviews for the Real Estate Director position, the interview panel afforded no consideration to the disparate warrants possessed by Ms. Barnes-Staples and Ms. Wittstock.

38. The second level interview questions for the Real Estate Director position made Ms. Wittstock's selection over Ms. Barnes-Staples a foregone conclusion. Rather than discuss

qualifications for the position based on the job description, questions focused on specific issues in the division which were not listed as job requirements but which gave the Caucasian applicant an advantage as she was currently working in the division.

39. Ms. Barnes-Staples was the most qualified candidate for the Real Estate Director position and was uniquely more qualified for the position than Ms. Wittstock, who was ultimately selected for the role. Ms. Barnes-Staples had a superior educational background in a more relevant area, superior technical knowledge and experience fulfilling the role of lease contracting officer that she would be supervising, and possessed an 1170 warrant.

40. Ms. Barnes-Staples was initially informed that the basis for selecting Ms. Wittstock for the Real Estate Director position was Ms. Wittstock has demonstrated a "superior vision" for the division. After Ms. Barnes-Staples filed her clam of discrimination, the GSA began adding to the explanation, now claiming the reason was her vision *and* experience meeting the knowledge, skills, and abilities required for the Real Estate Director Position.

41. Region 5 is so well known for not promoting minority applicants at GS-15 and above that minority applicants working in Region 5 who have been passed over for such promotions have sought career advancement by applying in other Regions and by doing so have been promoted.

**COUNT I – Violation of Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e *et seq*., for Discrimination Based on Sex, Race, and/or National Origin**

42. Ms. Barnes-Staples repeats and reasserts paragraphs 1 through 41 as if fully restated herein.

43. Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer…to discriminate against any individual with respect to his [or her]

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)

44. Ms. Barnes-Staples status as an African America makes her a member of a protected class.

45. The GSA is an employer as defined under Title VII.

46. Ms. Barnes-Staples met the qualifications for the Real Estate Director position, as demonstrated by her being allowed to interview and her advancing to the second round of interviews.

47. Ms. Barnes was not awarded the Real Estate Director position. Instead, the position went to Ms. Wittstock, who is not a member of the protected class.

48. Ms. Barnes-Staples was the more qualified candidate, possessing a superior and more relevant educational background, more relevant departmental experience, and a 1170 warrant.

49. GSA's basis for selecting Ms. Wittstock for the Real Estate Director position was pretextual and designed to exclude African Americans and African American women from GS-15 positions.

50. The inference of discriminatory intent can be drawn here. When Ms. Barnes-Staples lacks experience, experience is required. When Ms. Barnes-Staples possesses experience, it is irrelevant.

51. The GSA discriminated against Ms. Barnes-Staples by failing to promote her to the GS-15 Real Estate Director position instead awarding the position to a less qualified candidate from outside the protected class based upon her race, her sex, or any combination of sex, race, and other protected classes.

**WHEREFORE** Plaintiff Kimberly Barnes-Staples respectfully requests the entry of judgment in her favor and against Defendants as follows:

    A. An award of damages for back pay, front pay, and other equitable relief including, but not limited to promotion to a GS-15 position;

    B. An award of compensatory damages in an amount to be proven at trial;

    C. Liquidated damages;

    D. An award of prejudgment interest;

    E. An award to Plaintiff for reasonable attorneys' fees and costs; and

    F. All other relief this Court deems just.

### COUNT II – Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for Retaliation

52. Ms. Barnes-Staples repeats and reasserts the allegations of paragraphs 1 through 51 as if fully restated herein.

53. Ms. Barnes-Staples engaged in activity protected by Title VII when in August 2018 she filed an EEO complaint against the GSA.

54. As a result of Ms. Barnes-Staples reports of discrimination based upon her race, her sex, or any combination of sex, race , the GSA acted in a materially adverse fashion to deny Ms. Barnes-Staples the Real Estate Director position for which she was qualified. Further, the second level interview was conducted in a manner to make it impossible for Ms. Barnes-Staples to be selected and to ensure the selection of a Caucasian candidate.

**WHEREFORE** Plaintiff Kimberly Barnes-Staples respectfully requests the entry of judgment in her favor and against Defendants as follows:

    A. An award of damages for back pay, front pay, and other equitable relief including, but not limited to promotion to a GS-15 position;

B. An award of compensatory damages in an amount to be proven at trial;

C. Liquidated damages;

D. An award of prejudgment interest;

E. An award to Plaintiff for reasonable attorneys' fees and costs; and

F. All other relief this Court deems just.

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**Dated**: June 19, 2020                                      **KIMBERLY BARNES-STAPLES**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major (ARDC No. 6205049)
Keith Barnstein (ARDC No. 6299044)
**The Law Offices of Ruth I. Major P.C.**
70 W. Madison, Suite 20200
Chicago, Illinois 60603
Tel: (312) 893-7544
Fax: (312) 698-9867
rmajor@major-law.com
kbarnstein@major-law.com