**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY BARNES-STAPLES, | |
| Plaintiff, | Case No. 20-cv-3627 |
| v. | Magistrate Judge Sunil R. Harjani |
| EMILY W. MURPHY, Administrator, General Services Administration, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Defendant's Motion for Entry of a Litigation Hold Protective Order [32] and Plaintiff's Motion to Compel [44]. In these motions, the Court is called upon to determine the appropriate scope of discovery in a Title VII failure to promote case through a detailed evaluation of relevancy and proportionality pursuant to Federal Rule of Civil Procedure 26(b)(1). Indeed, the Court's resolution of these motions is an example of what the Advisory Committee to the Federal Rules of Civil Procedure had in mind with the 2015 amendments to the federal rules: active judicial management of discovery, early determination of the boundaries for discovery, and a thoughtful balance between relevancy and proportionality to ensure a just, speedy and inexpensive determination of an action.

For the reasons explained below, the Court finds that discovery in this case should generally be limited to hiring decisions in Plaintiff's region (Region 5), which concern the grade level sought by Plaintiff (GS-15) during the time-frame January 1, 2018 to the present. Plaintiff is also entitled to some discovery regarding the second-level interviewers involved in the promotional decision challenged by Plaintiff, which may include prior comparable hiring decisions made by those individuals in other regions. The Court accordingly grants in part and denies in

1

part Defendant's motion [32] and orders that Defendant implement the litigation hold as modified

by the Court in this opinion.  The Court likewise grants in part and denies in part Plaintiff's motion

[44] and orders Defendant to produce documents in response to Plaintiff's discovery requests as

outlined in this opinion.

## Background

Plaintiff Kimberly Barnes-Staples initiated this action in June 2020, alleging that her

employer, the General Services Administration (GSA), violated Title VII of the Civil Rights Act

of 1964 when GSA failed to promote her to a GS-15 level Real Estate Director position she applied

for in March 2019. Doc. [1].  According to Barnes-Staples, the position went to a lesser qualified

person, who is not a member of a protected class. *Id.* ¶¶ 29-34, 47-48.  Barnes-Staples further

alleges that GSA's basis for hiring the Real Estate Director position was pretextual and designed

to exclude African Americans and African American women from GS-15 positions. *Id.* ¶ 49.  In

addition to her failure to promote claim, Barnes-Staples claims she was retaliated against for filing

an Equal Employment Opportunity (EEO) complaint against GSA in August 2018. *Id.* ¶¶ 52-54.

Defendant Emily W. Murphy, Administrator, GSA, generally denies Barnes-Staples' allegations

and asserts defenses, including the failure to exhaust administrative remedies. Doc. [31].

In June 2020, counsel for Barnes-Staples requested that GSA implement a litigation hold,

in which GSA would:

> preserve all documents relating to hiring and/or promotions in
> Region 5 and the General Services Administration generally for all
> GS-13, GS-14, GS-15, and GS-16 positions filled and/or posted
> since January 1, 2018. This includes, but is not limited to, all drafts
> of job descriptions, all drafts of interview questions, all
> communications relating to interview questions, all interviewer
> notes, all applications, all communications between interviewees
> and interviewers, all communications between interviewers, all
> communications between interviewees, all interview scores, all
> interview recommendations, all interview reports, all interview

emails, all interview memoranda, all documents relating to interview assignments, all documents related to applications, and documents relating to Human Resources evaluations of applicants.

Doc. [32-1]. The Administrator sought a protective order on September 10, 2020 due to the breadth of the litigation hold request. Doc. [9]. Believing that the motion was unopposed, the district judge initially granted the motion. Doc. [12]. After Barnes-Staples responded in opposition to the Administrator's motion, the district judge revised its order, requiring GSA to issue the litigation hold letters requested until this Court could rule on the issue. Docs. [13, 16]. The Administrator reports that GSA initially attempted to comply with the requested litigation hold request but filed the present motion for a protective order after the litigation hold became unworkable. Doc. [32] at 2; Doc. [32-2].

In October 2020, Barnes-Staples issued her First Set of Document Requests to Defendant and her First Set of Interrogatories to Defendant. *See* Docs. [44-1, 44-3]. The Administrator responded with objections to the discovery requests on numerous grounds, including breadth, relevance, proportionality, and privacy concerns. *See* Docs. [44-2, 44-4]. The parties subsequently met and conferred about the discovery requests but remain at loggerheads on various issues. *See* Docs. [46-5, 46-6]. Barnes-Staples therefore filed the motion to compel at issue in this opinion in March 2021. *See* Doc. [44].

## **Discussion**

The Administrator moves for a protective order that limits the scope of records that it must preserve for the case to all records related to promotions in the Region 5 office of GSA to positions at the GS-15 level or above from January 1, 2018, to the present. Doc. [32] at 4. In support, the Administrator argues that the burden of issuing the hold letters, locating the responsive records, and preserving the records, as requested by Barnes-Staples in June 2020, outweighs the potential

3

relevance of the records to Barnes-Staples' claim. *Id.* at 2. Barnes-Staples responds that the Administrator has not established that preserving the evidence is burdensome, and that the information to be preserved is relevant. Doc. [41].

Barnes-Staples moves for an order to compel the Administrator to produce numerous items of information and documents listed in her motion in connection with her first set of document requests and her first set of interrogatories. *See* Doc. [44] at 14-15. The Administrator opposes the motion, arguing primarily that Barnes-Staples' discovery requests are not proportional to the needs of the case. *See* Doc. [46].

The Court finds, as discussed below, that the litigation hold and some of the discovery requested by Barnes-Staples are overbroad and not proportional to the needs of the case. Still, the scope of discovery in this Title VII employment action is not as narrow as the Administrator contends. As a result, the Court grants in part and denies in part both motions, and orders the Administrator to implement a litigation hold and provide discovery responses in accordance with this opinion.

## I.    Scope of Discovery

Federal Rule of Civil Procedure 26 governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)-(b). In determining the scope of discovery under Rule 26, relevance is construed broadly and is "not limited to issues raised by the pleadings[.]"

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  After all, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

However, discovery must be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  While the concept of proportionality was always present in the rules, Rule 26 was amended in 2015 to "restore[] the proportionality factors to their original place in defining the scope of discovery." Fed. R. Civ. Pr. 26 advisory committee's note.  The 2015 amendment thus "reinforce[d] the . . . obligation of the parties to consider these factors in making discovery requests, responses, or objections." *Id.*[1]

A court, in turn, must "limit the frequency or extent of discovery otherwise allowed by [the] rules" if "the discovery sought is unreasonably cumulative or duplicative" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).  Rule 1 likewise directs that the civil rules should be "construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  And magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). *See also* Fed. R. Civ. P. 16(b)-(c)

---

[1] At times, Barnes-Staples urges broader discovery because the requested information could lead to the discovery of admissible evidence. *See* Doc. [44] at 2, 4; Doc. [47] at 2.  Although evidence need not be admissible to be discoverable, Fed. R. Civ. P. 26(b)(1), the 2015 Amendment to Rule 26 struck the provision for discovery of information that appears "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pr. 26 advisory committee's note.  According to the Committee, the phrase was deleted because it was "used by some, incorrectly, to define the scope of discovery," and having the "reasonably calculated" provision define the scope of discovery "might swallow any other limitation on the scope of discovery." *Id.*  Hence, the likelihood that requested information could lead to admissible evidence is no longer an indication of discoverable information.  Discoverable information is information that is non-privileged, relevant, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

(providing the court broad authority to enter orders regarding the controlling and scheduling of discovery).

With these principles in mind, the Court turns to determining the proper bounds of discovery in this case. To do so, the Court addresses the main issues disputed by the parties concerning: (1) discovery from other GSA regions; (2) decisionmakers; (3) similarly situated individuals; and (4) the discovery timeframe.

### A.      Other GSA Regions and Statistical Data

Barnes-Staples alleges in her complaint that the Great Lakes Region 5 office of GSA failed to promote her from a GS-14 position to a GS-15 position based on her race and sex. Doc. [1], ¶¶ 13, 19, 51. To make her claim of employment discrimination, Barnes-Staples initially bears the burden of establishing a prima facie case of discrimination by offering evidence that: "(1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016) (citation omitted). If the plaintiff succeeds in her prima facie burden, "the burden shifts to the employer, who must articulate 'a legitimate nondiscriminatory reason for the employment action,' at which point the burden shifts back to the plaintiff to submit 'evidence that the employer's stated reason is a pretext.'" *Outley v. City of Chicago*, 354 F. Supp. 3d 847, 863 (N.D. Ill. 2019) (citation omitted).

Because the adverse employment action in this case concerns Barnes-Staples' non-promotion for a Region 5 position, the Administrator contends that GSA should not have to preserve or produce documents regarding promotion and hiring decisions taking place in other GSA regions. *See* Doc. [46] at 6, 11. Whereas Barnes-Staples advocates for some agency-wide

6

preservation and discovery because a number of the interview panel members involved in the adverse employment action are from outside of Region 5. Doc. [44] at 10. Barnes-Staples further contends that information on other GSA regions' hiring practices will help her present statistical data on disparate treatment. *Id.* at 10-11.

Generally, when litigating an individual complaint of discrimination, "the appropriate focus of discovery is upon the individual's local employing unit or work unit rather than upon company-wide information." *Cain v. Elgin, Joliet & E. Ry.*, No. 2:04-CV-347-RL, 2005 WL 8170023, at *3 (N.D. Ind. Sept. 2, 2005) (collecting cases). *See Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 620 (S.D. Ind. 2002) (collecting cases) ("In employment discrimination cases, discovery is usually limited to information about employees in the same department or office absent a showing of a more particularized need for, and the likely relevance of, broader information."); *Holley v. Pansophic Sys. Inc.*, No. 90 C 7505, 1993 WL 394764, at *3 (N.D. Ill. Oct. 1, 1993), *modified*, No. 90 C 7505, 1993 WL 436390 (N.D. Ill. Oct. 26, 1993) (citations omitted) ("In cases of individual claims, discovery is often limited to the work unit or employing unit where the decision affecting a plaintiff was made.").

However, discovery can be expanded outside of the employee's unit "if a plaintiff can establish that the employment decision was made by someone outside of her work unit[.]" *Byers v. Illinois State Police*, No. 99 C 8105, 2002 WL 1264004, at *6 (N.D. Ill. June 3, 2002) (citations omitted). But even then, such discovery "must be tailored to the legal issues involved in each particular case," and cannot extend to claims of discrimination outside of the work unit that are "too remote from the allegations" involved in the case at hand. *Id.* at *9 (limiting discovery of out-of-district claims of discrimination to those that implicated the named defendants). Courts have thus limited discovery in employment discrimination cases based on department, similarly situated

employees, time period, and decisionmakers. *See, e.g.*, *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309 (7th Cir. 2003) (district court did not abuse discretion in age discrimination action in which plaintiffs requested companywide personnel information in limiting scope of discovery to relevant corporate department, similarly situated employees, time period, and decisionmakers).

Statistical data can also be used in an individual employment discrimination case to show pretext, although the usefulness of the statistics for individual cases "depends on all the surrounding facts and circumstances." *Bell v. E.P.A.*, 232 F.3d 546, 553 (7th Cir. 2000) (internal quotation marks and citation omitted). At trial, statistical evidence may be admitted if it makes a fact of consequence more or less likely pursuant to Rule 401 of the Federal Rules of evidence. *Id.* At this pretrial stage, "a plaintiff in an employment discrimination case generally may obtain discovery regarding the employer's treatment of other employees who are similarly situated to [the] plaintiff." *Tounsel v. First Am. Bank*, No. 03 C 2436, 2005 WL 8177367, at *3 (N.D. Ill. Feb. 3, 2005) (citation omitted).[2]

The *Cain* case provides a helpful example of outlining the proper scope of discovery when a disparate treatment plaintiff pursues statistical analysis. There, the plaintiff, who had been terminated from his position at Joliet & Eastern Railway, brought racial discrimination and retaliation claims under Title VII. *Cain*, 2005 WL 8170023, at *1. In discovery, the plaintiff served

---

[2] Barnes-Staples states that "[c]ourts have recognized that statistical evidence can be admissible to demonstrate *disparate impact* in employment discrimination cases." Doc. [44] at 10-11 (emphasis added). For clarity, the Court observes that Barnes-Staples has brought a *disparate treatment* case. Doc. [1] ¶ 43. In a disparate impact case, the plaintiff does not have to show intentional discrimination, just that the defendant "has established an employment practice that causes a disparate impact 'on the basis of race, color, religion, sex, or national origin.'" *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1006 (7th Cir. 2019) (citation omitted). Disparate-impact plaintiffs are "permitted to rely on a variety of statistical methods and comparisons to support their claims." *Id.* Because of the different nature of the claims, Plaintiff's reliance on disparate impact cases are of no moment here.

an interrogatory calling for information on every person employed by the defendant at the Gary, Indiana location where the plaintiff worked, which would enable the plaintiff to do a statistical analysis of employees located within the same workplace. *Id.* at *2. The defendant objected to the interrogatory as overbroad, burdensome, and irrelevant. *Id.* The *Cain C*ourt found the information requested by the plaintiff to be relevant in terms of conducting a statistical analysis of certain employees and the defendant's workforce in general. *Id.* at *2. However, the court found that the statistical evidence should be limited to employees similarly situated to the plaintiff, and that the information requested should not be overly broad and unduly burdensome to the defendant. *Id.* In striking the right balance, the court determined that the "appropriate scope of discovery . . . for identifying similarly situated individuals and a pattern of discrimination is those employees who worked in the same units or departments within which the Plaintiff worked . . . at the Gary, Indiana location." *Id.* at *3. Significantly, the Court found that its scope provided the plaintiff "a broad enough group of coworkers from which to do the requisite statistical analysis and from which to argue who are the similarly situated employees," while also ensuring that the defendant "[would] not be burdened with searching its records for irrelevant information." *Id.*

Applying those principles here, the record shows that Barnes-Staples' non-promotion was largely a local, Region 5 decision. Barnes-Staples works in the Public Building Service for Region 5 of GSA and has been working at the GS-14 level for nearly 20 years. Doc. [32-2] ¶ 13. In July 2018, Barnes-Staples applied for a director position at the GS-15 level in the Public Building Service unit of Region 5. Doc. 1 ¶ 21. She was denied an interview because she supposedly lacked technical knowledge. *Id.* ¶ 22. In March 2019, Barnes-Staples applied for another director position in Region 5, the position of Real Estate Director. *Id.* ¶ 24. The three panelists from Barnes-Staples' first level interview for the Real Estate Director position

unanimously found her qualified and advanced her to the second and final level of interviewers. Doc. [44] at 3. Barnes-Staples' first interview panel consisted of two Region 5 employees and one employee from outside of Region 5. Doc. [44-4] at 5. The second level panel, which included an employee from GSA's National Office of Leasing, did not select Barnes-Staples for the position. Doc. [46-1] at 4-5; Doc. [44-4] at 5. Ultimately, Robert Green, the Public Building Service Region 5 Chief of Staff, was the selecting official. Doc. [46-1] at 4. The Court accordingly finds that Region 5 is the primarily relevant region for purposes of discovery.

The Administrator has further demonstrated that the preservation and production of all of the documents requested from other GSA regions is not proportional to the needs of the case. For example, the Administrator filed a declaration from its Assistant Regional Counsel, Lisa Dall, who stated that acquiescing to the broad scope of preservation and discovery requested by Barnes-Staples would involve digging into more than 2,000 vacancy announcements, involving more than 800 different selecting officials (which does not include interview panel members). Doc. [46-8] ¶¶ 11-12. According to Dall, the process of determining the panel members, in and of itself, would be time-consuming, in that GSA would have to contact each of the 800 different selecting officials to determine the panel members involved. *Id.* ¶ 12. Then GSA would need to preserve documents from and produce documents regarding each of the panel members, estimated to be at least 4,000 employees. *Id.* ¶ 12. The Administrator has therefore convinced the Court that the "the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1), particularly in light of the fact that such preservation and discovery would "relate to promotions that: (a) plaintiff never applied for; (b) involve GSA decision-makers who never made a decision regarding the plaintiff; and (c) involve panel members who also never made a decision regarding

the plaintiff." Doc. [46-8] ¶ 12.  The Court consequently finds that, by and large, discovery in this case should be limited to Region 5.

On the other hand, Barnes-Staples has shown that at least two decisionmakers involved in her non-promotion are employed outside of Region 5.  The Court therefore finds, as discussed further below, that Barnes-Staples is entitled to some discovery outside of Region 5 with respect to those interview panel members and the similarly situated employees who they evaluated.  That scope should strike the balance of providing Barnes-Staples "a broad enough group of [employees] from which to do the requisite statistical analysis and from which to argue who are the similarly situated employees," *Cain*, 2005 WL 8170023, at *4, while also avoiding undue burden or expense to GSA.

### B.    Decision Makers

To prevail in her Title VII claim, Barnes-Staples will have to "provide direct or circumstantial evidence that the decisionmaker has acted for a prohibited reason." *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 378-79 (7th Cir. 2011) (internal quotation marks and citations omitted).  Barnes-Staples contends that decision maker discovery in this case should include all six interview panel members and Human Resources. Doc. [44] at 4-5.  Specifically, Barnes-Staples pushes for the personnel files of "the six panel decisionmakers and one human resources manager" to be preserved and produced. *Id.*  The Administrator avers that only the selecting official, Robert Green, should be considered the decisionmaker, and that Barnes-Staples' request for personnel files is overbroad, irrelevant, and not proportional to the needs of the case. Doc. [46] at 6, 8.  The Administrator further objects pursuant to the Privacy Act and Freedom of Information Act. *Id.* at 6.

A decisionmaker is the "person responsible for the contested decision." *Schandelmeier-Bartels*, 634 F.3d at 379 (internal quotation marks and citation omitted). Ordinarily, evidence of animus from a co-worker or supervisor "who was not involved in making an employment decision ha[s] no bearing on the ultimate issue: whether the decision was the result of discrimination." *Hall v. City of Aurora*, No. 06 C 6011, 2008 WL 4877156, at *10 (N.D. Ill. June 13, 2008) (citing *Gorence v. Eagle Food Centers, Inc*., 242 F.3d 759, 762 (7th Cir.2001)). Yet, under the so-called "cat's paw" theory, the biased actions of someone who was not the decisionmaker can still bind an employer if the actions of the biased employee were the proximate cause of an adverse action suffered by the plaintiff. *Wojtanek v. Dist. No. 8, Int'l Ass'n of Machinists & Aerospace Workers*, AFL-CIO, 435 F. App'x 545, 549 (7th Cir. 2011) (citing *Staub v. Proctor Hosp*., 562 U.S. 411, 420, 131 S. Ct. 1186, 1190 & n. 1, 179 L.Ed.2d 144 (2011)). In the failure to promote context, members of an interview panel have constituted decisionmakers. *See Murthy v. Shinseki*, No. 08-CV-2015, 2010 WL 2178559, at *6 (C.D. Ill. May 28, 2010) ("In this case, the interview panel scored the interviews of the five candidates and the person with the highest score received the promotion. Therefore, the five members of the interview panel were the 'decisionmakers' in this case."); *but see Lawhead v. Ceridian Corp*., 463 F. Supp. 2d 856, 863 (N.D. Ill. 2006) (interviewer not decisionmaker). And at least one court in this Circuit allowed decisionmaker discovery to include information about "any [ ] supervisor who was personally involved in [the] promotional decision challenged by [the plaintiff]." *Sykes v. Target Stores*, No. 00 C 5112, 2002 WL 554505, at *5 (N.D. Ill. Apr. 15, 2002).

Here, Robert Green, Public Building Services Region 5 Chief of Staff, stated in an affidavit that he was the selecting official for the real estate director position. Doc. [46-1] at 4. Green further stated that the other second level interview panelists, John Cooke and Allison Azevedo, were also

involved in the selection decision. *Id.* at 4-5. According to Green, there was no ranking of the second level interviewees, but that Sheryl Wittstock was selected because she "represented the best qualified candidate based on her experience, 1st level and 2nd level interviews." *Id.* at 7. Barnes-Staples was initially referred for a first level interview after human resources screened Barnes-Staples and determined that she was qualified for the position. *Id.* at 5. The limited record before the Court thus illustrates that at least seven individuals were involved in the hiring process for the real estate director position: the individual(s) in human resources conducting the threshold paper screening, the three first-level interviewers, and the three second-level interviewers, one of whom was Green.

However, simply being involved in the hiring process does not mean that a person is "responsible for the contested decision." *Schandelmeier-Bartels*, 634 F.3d at 379. Rather, the individuals "responsible for the contested decision" are those who decided not to select Barnes-Staples for the position. The record here demonstrates that, at most, that pool of individuals would consist of the three second-level interviewers who selected Wittstock over Barnes-Staples. After all, how could the human resources employee who deemed Barnes-Staples qualified for the promotion, or the three first-level interviewers who recommended Barnes-Staples for the second-level interview be considered responsible for preventing Barnes-Staples' promotion? That said, the case is still in discovery, and the Court need not definitively state who the decision makers are at this point.

For now, it is sufficient to say that the Administrator has shown that the production of entire personnel files for each of the six interviewers and the human resources manager is not proportional to the needs of this case. As the administrator points out, the personnel files contain sensitive information about the individuals' health benefits, retirement benefits, and beneficiary

designations, all of which would be useless to Barnes-Staples. *See Sykes*, 2002 WL 554505, at *4 n.7 (denying plaintiff's motion to compel to the extent it sought payroll information for supervisors who made the relevant employment decisions in the case).

Barnes-Staples trumpets *Spina v. Forest Pres. Of Cook County* for the proposition that the personnel files of decision makers and those who influenced the decisionmakers are discoverable, but the *Spina* case does not espouse such a general proposition, and this case is not like *Spina*. In *Spina*, the defendants dumped thousands of pages of discovery on a sexual harassment plaintiff, after the close of discovery, and near the time of trial. *Spina v. Forest Pres. of Cook Cty*., No. 98 C 1393, 2001 WL 1491524, at *3 (N.D. Ill. Nov. 23, 2001). That production included the personnel files for several of the individual defendants accused of sexual harassment and from female officers who made complaints of sexual harassment and/or discrimination. *Id.* The *Spina* Court sanctioned the defendants for their tardy production because the court found that the too-late produced files contained relevant information showing that the Forest Preserve District had taken inconsistent positions in the past about the harassing officers, as well as other evidence of the officers' harassment of the plaintiff. *Id.* The court further found that the personnel files of the individual defendants and other female officers who had complained of sexual harassment contained "highly relevant information" that could have been used by the plaintiff in depositions *Id.* Here in this failure to promote case, by contrast, the personnel files of the interviewers would not contain allegations of discriminatory promotion decisions, according to the Administrator. Doc. [46] at 8. Instead, those allegations would be found in EEO complaints. Consequently, the *Spina* case does not support the production of personnel files for each individual involved in Barnes-Staples' non-promotion.

On balance, the Court finds that proportional decision maker discovery at this time is limited to "all files containing personnel material relating to [discriminatory] complaints about" Green, Cooke, and Azevedo. Doc. [47] at 6. However, the Administrator's litigation hold should include—to the extent it does not already—the personnel files of the human resources manager and all six interviewers. If discovery later shows that any of the first three interviewers and/or the human resources manager exerted influence supporting a "cat's paw" theory, discovery into files containing personnel material relating to complaints about those non-decision makers may become discoverable.

### C.    Similarly Situated

Barnes-Staples' proposed litigation hold and discovery requests include information regarding GSA employees from outside of Region 5, GSA employees who were not deemed eligible for the real estate director position at issue, demographic information and discrimination complaints concerning age and national origin, and GSA employees seeking promotions at the GS-13 and GS-14 levels. Barnes-Staples moves to compel such discovery, asserting that this information is relevant and discoverable because it could lead to evidence that even more qualified candidates were intentionally disregarded and may also be black, and that the information will demonstrate that black women are disproportionately passed over for promotion than their white and/or male colleagues. *See, e.g.* Doc. [44] at 8. The Administrator insists that the requested information is overbroad, not relevant, and not proportional to the needs of the case. *See, e.g.* Doc. [46] at 11.

Again, "a plaintiff in an employment discrimination case generally may obtain discovery regarding the employer's treatment of other employees who are similarly situated to [the] plaintiff." *Tounsel*, 2005 WL 8177367, at *3. A similarly situated employee "must be directly

comparable to the plaintiff in all material respects . . . The purpose of the inquiry is to eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable – discriminatory animus." *Skiba v. Illinois Central Railroad Co*., 884 F.3d 708, 723 (7th Cir. 2018) (internal quotation marks and citations omitted). Typically, a plaintiff must, "at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (internal quotation marks and citations omitted). Still, the similarly-situated determination is a "flexible" and "common-sense" inquiry, and the Court looks for "comparators, not clones." *Coleman v. Donahoe*, 667 F.3d 835, 841, 846 (7th Cir. 2012) (internal quotation marks and citations omitted).

Here, Barnes-Staples is a GS-14 employee working in the Public Building Service unit of GSA in Region 5. She was denied a promotion for a GS-15 level position in Region 5, after being deemed eligible and making it to a final interview with Green, Azevedo, and Cooke. Because the determination of whether an individual is "similarly situated" is "usually a question for the fact-finder," *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009), the Court does not endeavor to define the set of similarly situated individuals. To manage discovery, however, the Court finds that the proportional scope of comparator information at this point is for individuals seeking GS-15 level positions in Region 5 who were referred for interviews, as well as individuals seeking GS-15 level positions outside of Region 5 who were interviewed by Green, Cooke, or Azevedo.

The Court finds that the above is proportional to the needs of this case, in light of the burden and breadth concerns raised by the Administrator. For instance, the Administrator highlights that Barnes-Staples has been a GS-14 level employee for nearly twenty years. Doc. [32] at 3-4. As

such, she is not similarly situated to individuals seeking GS-13 and GS-14 positions. The burden, moreover, of expanding the hiring decision information to those levels is not worth the limited (if existent) probative value. While the Administrator does not quantify how many positions are added by the expansion to the GS-13 and GS-14 levels specifically, Dall stated that responding to Barnes-Staples' requests, as they stand, involves the investigation of more than 2,000 hiring decisions. Doc. [46-8] ¶ 11. That is enough of a showing for this Court to say that discovery into all of the GS-13 and GS-14 promotions from recent years is a burdensome effort not merited by the helpfulness of the information because GS-13 and GS-14 promotion decisions, particularly those from outside of Region 5, are too remote to have probative value for Barnes-Staples' allegations.

In a similar way, employees who were weeded out in the initial screening process for a GS-15 level position are too far afield from Barnes-Staples and her claims. For the real estate director position specifically, three candidates were immediately deemed ineligible because they worked outside of Region 5. Doc. [46] at 10. The Administrator produced the ineligible candidates' applications, so that Barnes-Staples could see that the applicants were overtly ineligible from a paper review. *Id.* Barnes-Staples emphasizes that she has alleged that the hiring process was manipulated to ensure that a certain white woman would get the position, and that limiting the criteria to Region 5 would make it easier to accomplish the goal and ensure less competition. Doc. [47] at 4. However, it is not clear how the personnel files and related materials of GS-15 level applicants immediately screened out could show that GSA manipulated the hiring process, or that Barnes-Staples did not get the real estate director position due to discrimination. The ineligible candidates were eliminated from the pool; nothing about their circumstances

demonstrates that Barnes-Staples, who was eligible for the promotion, was the subject of discrimination.

Furthermore, as this Court and others have stated in the past, while some amount of fishing is generally necessary in the pretrial discovery process, the movant has to give the Court a reason to believe that the pond might be stocked with fish. *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-CV-02436, 2019 WL 6052366, at *3 (N.D. Ill. Nov. 15, 2019) (citations omitted). Put another way, although Barnes-Staples is entitled to broad discovery to pursue her claims, she cannot use discovery to "test every conceivable theory of a claim or defense without any limitation." *Id.* There is no evidence as of yet to support the claim that GSA manipulated the initial screening process for the real estate director position, so the burden of preserving and producing those personnel files of initially screened out applicants is not warranted at this time. Of course, Barnes-Staples is free to inquire about the initial screening process for GS-15 level positions during depositions, and if those depositions show manipulation or otherwise illuminate the relevance of the initially screened-out individuals, discovery for their personnel files may be warranted.[3]

### D.    Time

The events leading to this action took place from approximately July 2018 to March 2019, when Barnes-Staples most recently sought GS-15 promotions. Doc. [1] ¶ 3. The non-promotion, specifically, took place in April 2019. Doc. [46-1] at 4. Barnes-Staples' discovery requests, however, seek information spanning from January 1, 2014, to the present, which the Administrator contends is arbitrary and not proportional to the needs of the case. Doc. [46] at 11. Barnes-Staples defends the timeframe by arguing that the information will help her present a history of

---

[3] The Court accordingly orders the Administrator to include the personnel files of the three screened-out individuals for the real estate director position in GSA's litigation hold.

discrimination, and that the GSA hiring panels review the experience and candidates going back beyond five years, so more than just the candidates' recent records matter. Doc. [47] at 4.

Courts in this Circuit have applied various temporal bookends to disparate treatment discovery. *See, e.g.*, *Sykes*, 2002 WL 554505, at *4 (three years); *Cain*, 2005 WL 8170023, at *2 (five years). In *Tomanovich v. Glen*, the court held that a "time period of five years is reasonable and appropriate in a case," in which the plaintiff is "alleging disparate treatment [and] may utilize statistical evidence to establish a prima facie case of discrimination." *Tomanovich v. Glen*, No. IP 01-1247 C Y/K, 2002 WL 1858795, at *2 (S.D. Ind. Aug. 13, 2002). The Court agrees and would be inclined to set a timeframe of more than one year preceding Barnes-Staples' non-promotion, which took place on April 29, 2019. Doc. [46-1] at 4. However, the Administrator indicates that GSA's document retention policy is to maintain promotion files for a period of two years following the date of the action and that they are subsequently destroyed, meaning that GSA does not have promotion files from before January 1, 2018. Doc. [46] at 12. Therefore, to give Barnes-Staples a larger data set from which to find comparators and pursue statistical analysis, the Court finds that the appropriate timeframe in this case is from January 1, 2018 to the present. The Court is allowing this time frame of more than 3 years to enable Barnes-Staples to find a sufficient quantity of comparators and pursue statistical analysis in support of her disparate treatment case. *See Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir. 1996) (citations omitted) ("Our opinions emphasize the need to get beyond a few comparison cases."). As for the hard copy notes of interviewers, any such notes responsive to Barnes-Staples' requests, and within the scope of discovery outlined by the Court in this opinion, must be produced to Barnes-Staples according to the production deadline specified below. If the Administrator finds she needs more time in light of the pandemic, the parties can meet and confer to negotiate the timely production of any such hard copy notes.

In conclusion, the Court finds that, at this time, the proper scope of discovery in this case is generally limited in the following ways:

- Geographically/Area – Region 5 (with the exception of eligible applicants for GS-15 positions who were interviewed by Green, Azevedo, or Cooke);

- Grade Level – GS-15;

- Decision-makers: Green, Cooke and Azevedo; and

- Time – January 1, 2018 to the present.

The Court next turns to applying the above discovery scope to the specific requests made by the parties in their respective motions.

## II.    Administrator's Motion for Litigation Hold Protective Order

On June 10, 2020, Barnes-Staples requested GSA: "preserve all documents relating to hiring and/or promotions in Region 5 and the General Services Administration generally for all GS-13, GS-14, GS-15, and GS-16 positions filled and/or posted since January 1, 2018. This includes, but is not limited to, all drafts of job descriptions, all drafts of interview questions, all communications relating to interview questions, all interviewer notes, all applications, all communications between interviewees and interviewers, all communications between interviewers, all communications between interviewees, all interview scores, all interview recommendations, all interview reports, all interview emails, all interview memoranda, all documents relating to interview assignments, all documents related to applications, and documents relating to Human Resources evaluations of applicants." Doc. [32-1].

In her motion for a protective order, the Administrator requests that the Court "enter a protective order that limits the scope of records that it must preserve for this case to all records

related to promotions in the Region 5 office to GS-15 or above from January 1, 2018, to the present[.]" Doc. [32] at 4.

For the reasons discussed above, the Court grants in part, and denies in part, that request. The Administrator shall preserve the records from January 1, 2018 to the present concerning hiring and/or promotions for GS-15 positions in Region 5, as well as GS-15 position hiring and/or promotions outside of Region 5, which involved interviews by any of the individuals who interviewed Barnes-Staples. The personnel files of Barnes-Staples's six interviewers, the human resources manager involved in her non-promotion, and the three applicants for the real estate director who were initially screened out shall also be preserved, as discussed above.

## III.     Barnes-Staples' Motion to Compel

At the conclusion of Barnes-Staples' Motion to Compel, she includes a list of eleven specific requests. The Court addresses each in turn below, in light of the scope of discovery found above:

### A.     Response to Document Req. Nos. 1-4, 6 - Which States Whether Responsive Materials Are Being Held

Barnes-Staples observes, accurately, that the Administrator's responses to Barnes-Staples' discovery requests lodge objections without specifying whether documents are being withheld on account of the Administrator's objections. Doc. [44] at 3. Rule 34 requires that a party objecting to discovery requests "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). *See Lloyd v. Whirlpool Corp*., No. 19 C 6225, 2020 WL 8115869, at *4 (N.D. Ill. Oct. 27, 2020) (holding lack of transparency in defendant's objection responses prevented plaintiff from "evaluating whether . . . the documents are already in his possession, are publicly available, or are more easily obtained from third parties."). The Court accordingly grants Barnes-Staples' Request in Item A. The Administrator shall amend its

responses to Document Request Nos. 1-4 and 6, so that the responses specify which documents are being withheld due to the Administrator's objections. The Administrator's objections and withholding of documents must be consistent with this opinion.

**B.    Response to Document Request No. 8 - Personnel Files for Green, Cooke, Azevedo, and Bocanegra and other Panel Members Whose Feedback Factored into Decision to Select Wittstock**

For the reasons explained above, Barnes-Staples' request for the personnel files of each interviewer and the human resources manager involved in Barnes-Staples' non-promotion is not relevant or proportional to the needs of the case. The Court accordingly grants in part and denies in part the request in Item B, and, consistent with the above, finds that the Administrator shall produce all files containing personnel material relating to discriminatory complaints about Green, Cooke, and Azevedo. Additionally, the Administrator conveys that she had earlier agreed during the parties' meet and conferral process, to providing performance appraisals and disciplinary actions for Green, Azevedo, and Cooke, pursuant to the protective order. Finding good cause for that discovery as well because the performance appraisals and disciplinary actions may contain information about an alleged discriminatory animus, the Court orders that the Administrator produce those documents to Barnes-Staples.

**C.    Response to Request No. 3 - Personnel Files for Each of Seven Candidates for Real Estate Director**

As discussed above, production of the personnel files for the three candidates who applied to the real estate director position, but who were immediately deemed ineligible, is not proportional to the needs of the case at this time. The Court accordingly grants in part and denies in part Barnes-Staples' Request in Item C. The Administrator shall, to the extent she has not already, produce the personnel files for the candidates who, like Barnes-Staples, were deemed eligible for the real estate director position.

**D.      Response to Request No. 3 - Personnel Files for any Candidates for which Interview Process Panels Included Green, Cooke, and Azevedo and other Panel Members Whose Feedback Factored into Decision to Select Wittstock, and any in which Bocanegra Participated, for Period of January 2014 to Present.**

As previously addressed by the Court, discovery as to similarly situated individuals at this time is limited to applicants deemed eligible for GS-15 positions in Region 5, as well as applicants deemed eligible for GS-15 positions outside of Region 5, who were interviewed by Green, Cooke, or Azevedo. The time frame is additionally from January 1, 2018 to the present. As such, the Court grants in part and denies in part the request in Item D. The Administrator shall produce the files for any eligible candidates for GS-15 positions in Region 5, and GS-15 positions outside of Region 5 which included Green, Cooke, or Azevedo as interviewers, from January 1, 2018 to the present.

**E.      Doc. Req. Nos. 1, 3 and Interrogatory No. 1 – Job Descriptions Including Drafts, Submissions from Candidates, Interview Questions and Notes, and Applicants' Race and Gender Information for Positions in Region 5 at the GS-13, GS-14, and GS-15 levels from January 2014 through the Present.**

Information about jobs and candidates at the GS-13 and GS-14 levels is, as discussed above, not relevant or proportional to the needs of the case. The Court has further found the proper timeframe to be from January 1, 2018 to the present. Hence, Barnes-Staples' request spelled out in Item E is granted in part and denied in part. The Administrator shall produce job descriptions including drafts, submissions from candidates, interview questions and notes, and applicants' race and gender information for positions in Region 5 at the GS-15 level from January 1, 2018 to the present.

F.    **Doc. Req. No. 1 – Job Descriptions Including Drafts, Submissions from Candidates, Interview Questions and Notes, and Applicants' Race and Gender Information for Positions outside Region 5 at GS-13-15 Levels from January 2014 through the Present**

While the Administrator is correct that Barnes-Staples' first document request did not actually ask for drafts, submissions from candidates, interview questions and notes, and applicants' race and gender information for positions *outside of Region 5*, *see* Doc. [46] at 12; Doc. [44-2] at 8 (Doc. Req. No. 1(f) asking for "[j]ob descriptions and job postings for any similar positions that were posted from January 1, 2014 through the present in Regions other than Region 5"), the Court nevertheless considers the request to help move discovery along in this case. For the same reasons discussed above with respect to Items D and E, the Court grants in part and denies in part the request from Item F. The Administrator shall produce job descriptions, including drafts, submissions from candidates, interview questions and notes, and applicants' race and gender information for positions outside Region 5 at the GS-15 level from January 1, 2018 to the present, limited to job positions tied to candidates who were interviewed by Green, Cooke, or Azevedo.

G.    **Doc. Req. No. 2 - Demographic Information Demonstrating Races, Genders, Ages, National Origins, Length of Service, Title, and GS Level of Individuals Working in Each Region of GSA Outside of Region 5 since 2014, Broken Out by Grade and By African American Females and Those who are not African American Females**

The Administrator contends that this request improperly includes demographic information about age and national origin, which are irrelevant to Barnes-Staples' race and gender case. Doc. [46] at 13. Barnes-Staples seems to concede that age is irrelevant but responds that if the decisionmakers in Barnes-Staples' case had a preference for white women, national origin could be a relevant demographic. Doc. [47] at 7.

While national origin discrimination and racial discrimination are not one and the same,[4] the line between racial discrimination and national origin discrimination can become blurred. *See Salas v. Wisc. Dep't of Corr.*, 493 F.3d 913, 923 (7th Cir.2007) (citations omitted) ("In the federal courts, there is uncertainty about what constitutes race versus national origin discrimination under Title VII."). For instance, in *Oranika v. City of Chicago*, the Court held that an employment discrimination complaint revolving around the plaintiff's being Nigerian "strongly implie[d] discrimination on the basis of color and race [ ] as well," such that it was improper to dismiss the plaintiff's race and color discrimination claims under Rule 12(b)(6). *Oranika v. City of Chicago*, No. 04 C 8113, 2005 WL 2663562, at *4 (N.D. Ill. Oct. 17, 2005). Whereas in *Padron v. Wal–Mart Stores, Inc.*, 783 F. Supp. 2d 1042, 1048-49 (N.D. Ill. 2011), the court found that the plaintiff's race discrimination claims were not reasonably related to his EEOC charge alleging discrimination based on his national origin of Cuba.

Here, Barnes-Staples has alleged race discrimination but not national origin discrimination. While the Court acknowledges the potential overlap, generally, between race discrimination and national origin discrimination, the facts and circumstances of this case do not suggest that Barnes-Staples' purported discrimination involved national origin animus. At any rate, the Administrator represents that GSA has produced "demographic data for GS-15 positions in Region 5 and Workforce Data reports for all GSA regions and services[.]" Doc. [46] at 13. That production appears proportional to the needs of the case at this time, given the unlikely benefit of collecting information regarding people who are not similarly situated to Barnes-Staples, by virtue of GS-level, region, and/or discrimination claim. The Court therefore declines to require the production of demographic data relating to national origin and age, and grants in part and denies in part the

---

[4] *Compare* 29 C.F.R. § 1606.1 (EEOC definition of national origin discrimination) *with* EEOC, *Race/Color Discrimination*, https://www.eeoc.gov/racecolor-discrimination (last visited on April 13, 2021).

request from Item G. To the extent not already produced, the Administrator shall produce demographic information demonstrating races, genders, length of service, title, and GS Level of individuals working in Region 5 since January 1, 2018, limited to those employees at the GS-15 level. As to how the information is broken out in the Administrator's production, the Court leaves that issue to the parties. They can meet and confer regarding the demonstration and organization of the data, if need be.

     **H.     Inter. No. 3 – Demographic Information Demonstrating Races, Genders, Ages, National Origins, Length of Service, Title, and GS Level of Individuals Working in Each Region of the GSA outside of Region 5 since 2014**

     The Administrator accurately observes that Barnes-Staples did not request demographic information outside of Region 5 in Interrogatory No. 3. Doc. [46] at 13. *See* Doc. [44-3] at 3.[5] The Administrator further states that GSA has already produced information responsive to Item H because GSA produced Workforce Data reports for all GSA regions and services. Doc. [46] at 13. Barnes-Staples does not dispute that production in her reply brief, or otherwise provide any response specific to Interrogatory No. 3. The Court therefore denies the request in Item G as moot.

     **I.     Doc. Req. No. 5 - Complaints of Discrimination Made by GS-13, GS-14, and/or GS-15 Employees in Region 5, Broken out by Grade and by African American Females and Those who are not African American Females**

     The Administrator objects that Document Request No. 5 is overbroad, unduly burdensome, irrelevant, and not proportional to the needs of the case. Doc. [44-2] at 4. In the Administrator's response brief, the Administrator elaborated that GSA would have to manually review each Equal Employment Opportunity file for the last seven years to respond to the complaint, which comprises about 30 files. Doc. [46] at 13. The Administrator complains that the files are not indexed by

---

[5] Interrogatory No. 3 plainly asks for demographic information about employees working in Region 5, not outside of it. *See* Doc. [44-3] at 3. While the Court considered a previously unasked-for discovery request in Item F, the Court declines to do so for this request. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).

grade, and that GSA does not track the complainant's grade levels. *Id.* In addition, the Administrator states that the request is irrelevant as to complaints about color, age, or national origin discrimination, as well as complaints as to other decisionmakers, and files before January 1, 2018. *Id.* at 13-14. Barnes-Staples argues that the Administrator has failed to explain why the review of 30 files is overly burdensome, and that, again, a decision maker's preference for white women could lead to a complaint about national origin or color.

As discussed above, Barnes-Staples has not alleged national origin discrimination. While the Court understands the potential for intersectional discrimination, the facts of the case thus far do not suggest the combination of race and national origin discrimination in Barnes-Staples' non-promotion. To the extent that a combined discrimination exists in the way proposed by Barnes-Staples—that is, "[a] preference for white women," Doc. [47] at 7—the Court expects that such an alleged preference would involve racially discriminatory animus as well, which would make information about that preference discoverable. Put simply, combination complaints that involve race and national origin should be discoverable, just as complaints involving age and gender (another of Barnes-Staples' claims of discrimination) should be discoverable. Yet, complaints only involving national origin or complaints only involving age are not discoverable.

Even with the elimination of complaints only involving national origin, or complaints only involving age, the request in Item E is still too broad. As discussed above, decision maker discovery in this case is currently limited to Greene, Cooke, or Azevedo because they are the three final interviewers who decided that Barnes-Staples would not get the real estate director position. Barnes-Staples therefore is entitled to discovery regarding the potential discriminatory animus of those potential decision makers, but not complaints made with respect to people not responsible for Barnes-Staples' non-promotion. The Court therefore grants the request in part and denies it in

part, and orders that the Administrator produce complaints of discrimination involving race, color,[6] and gender discrimination made by employees at the GS-13-GS-15 levels in Region 5, from April 29, 2014 to the present, involving Green, Cooke, or Azevedo.[7]

**J.     Doc. Req. No. 6 - Agency Documents that Address Equity Issues within the Agency**

The Administrator claims that GSA has produced all known reports discussing race and gender of employees in Region 5. Doc. [46] at 14. Barnes-Staples responds that the Administrator should be required to produce reports that discuss race and gender agency-wide, and that the Administrator should verify her due diligence efforts, given the Administrator's "reluctance to confirm" that all responsive documents to Request No. 6 have been produced. Doc. [47] at 7-8.

As an initial matter, Barnes-Staples' sixth document request asks only for "Copies of any reports disclosing the race, national origin, age, and sex of employees *in Region 5* or discussing race, national origin, age, and sex discrimination *in Region 5* for the period January 1, 2014 through the present" Doc. [44-2] at 5 (emphasis added). So, once again, Barnes-Staples asks for something in a motion to compel that was not initially requested in discovery. Barnes-Staples' request additionally is too broad because, as discussed above, the proper scope of discovery in this case is largely limited to GS-15 hiring decisions made in Region 5 with a discovery timeframe of

---

[6] Contrary to the Administrator's position, complaints about discrimination on the basis of color are relevant to Barnes-Staples' race discrimination claims. Barnes-Staples is a black woman pursuing a race and gender discrimination employment discrimination case. Other complaints regarding discrimination regarding skin color involving Green, Cooke, or Azevedo, could show that Barnes-Staples' decisionmakers had discriminatory animus pertinent to Barnes-Staples' non-promotion. The Court therefore will allow discovery regarding complaints of discrimination involving color discrimination as outlined above.

[7] For this one request, the Court finds it is appropriate to allow discovery beyond the GS-15 level and beyond the January 1, 2018 to present timeframe. The Court allows the broader discovery scope here, as the Court does not find the review of thirty files or less to be unduly burdensome. In addition, Barnes-Staples made her discriminatory complaint as a GS-14 employee, so it would not make sense to limit this request to complaints of GS-15 employees.

January 1, 2018 to the present. The Administrator has represented that GSA nevertheless produced all known reports discussing race and gender of employees in Region 5.

The Court therefore grants in part and denies in part the request from Item J. To the extent that the Administrator has not done so, the Administrator shall produce any copies of reports disclosing the race and sex of employees in Region 5, or discussing race and sex discrimination in Region 5 from the period of January 1, 2018 to the present. When amending the responses as directed in Item A, the Administrator shall also specify whether the GSA has produced all documents responsive to Request No. 6. In addition, upon production to Barnes-Staples, the Administrator shall serve an affidavit or declaration under Rule 34 of the Federal Rules of Civil Procedure stating that production is complete and correct in response to Request No. 6, as limited by the Court here.

### K. Granting Plaintiff Leave to Renew other Portions of this Motion in the Future

Barnes-Staples requests the opportunity to renew the motion if she needs to pursue some of the potential evidence she has agreed to forego at this time. Doc. [44] at 14. Barnes-Staple does not identify which pieces of evidence she has forgone, and to the extent the parties negotiated a resolution to certain requests, that resolution should be honored. Regardless, Barnes-Staples can file another motion to compel after reviewing the Administrator's production, should the need arise. The parties are reminded that discovery closes on May 30, 2021. Doc. [50].

### Conclusion

For the reasons stated above, Defendant's Motion for Litigation Hold Protective Order [32] is granted in part and denied in part, and Plaintiff's Motion to Compel [44] is likewise granted in part and denied in part. The Administrator shall preserve documents and information in

accordance with this opinion immediately and produce documents and information in accordance with this opinion by May 14, 2021.

**SO ORDERED.**

Dated:  April 15, 2021

Sunil R. Harjani
United States Magistrate Judge